IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:13-CV-531-GCM

| | |
|---|---|
| HAROLD E. BLACKWELL, JR., | ) |
| Petitioner, | ) |
| v. | ) ORDER |
| MERRILL LYNCH, PIERCE, FENNER & SMITH INC., | ) |
| Respondent. | ) |

This matter comes before the Court on a petition to vacate an arbitration award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a), filed *pro se* by Petitioner Harold E. Blackwell, Jr. ("Petitioner"). (Doc. No. 1). Respondent Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Respondent") is Petitioner's former employer. Having reviewed the record, Petitioner's Motion to Vacate (Doc. No. 1), and Respondent's Response in Opposition (Doc. No. 7), Petitioner's Motion to Vacate will be DENIED for the following reasons.

I.  FACTUAL BACKGROUND

On September 23, 2013, Petitioner brought this action to vacate an award made in arbitration following his termination as a Financial Advisor for Respondent. Petitioner began his employment with Respondent on July 27, 2005, and was terminated on September 16, 2009. (Resp't Resp. at 3, Doc. No. 7). During his employment, Petitioner was subject to certain employment policies and has admitted to violating at least three of them. (*Id.* at 3–5). On September 16, 2009, Respondent met with Petitioner to discuss its investigation into Petitioner's misconduct. (*Id.* at 7–8). After this meeting, and because of Petitioner's violation of company policies and lack of cooperation in the investigation, Respondent terminated Petitioner. (*Id.* at

1

8). The reasons for termination were set forth in the Form U5—a form Respondent was required to complete pursuant to the Financial Industry Regulatory Authority ("FINRA") bylaws. (*Id.*).

After his termination, Petitioner filed an arbitration claim against Respondent, which was administered by FINRA. (*Id.* at 1). In his Second Amended Statement of Claim, Petitioner asserted claims for negligence, gross negligence and recklessness, defamation, and invasion of privacy. (Second Am. Statement Claim at 9–12, Doc. No. 1-1). These claims arose from the investigation leading to Petitioner's termination, the termination itself, and Respondent's completion of the Form U5. (*Id.*).

On August 20, 21, and 22, a three-person arbitration panel convened in Charlotte, North Carolina to conduct the arbitration of this dispute. (*Id.* at 2). At the conclusion of Petitioner's case-in-chief, Respondent made a Motion to Dismiss. (*Id.*). After receiving Petitioner's evidence and hearing the arguments of both parties, the Panel convened and subsequently granted Respondent's Motion to Dismiss. (*Id.* at 2–3).

On September 23, 2013, Petitioner, proceeding *pro se*, moved this Court to vacate the arbitration award. (Mot. Vacate, Doc. No. 1). Petitioner asserts four "causes for vacatur" of the arbitration award. Accordingly, he asks this Court "to order the FINRA panel's award be vacated" and "to issue an order compelling the arbitration of his claims . . . before a new set of FINRA arbitrators." (Mot. Vacate at 12, Doc. No. 1).

## II.  LEGAL STANDARD

The standard for review for a petition to vacate an arbitration award is an extremely narrow one. *Long John Silver's Rests., Inc. v. Cole*, 514 F.3d 345, 349 (4th Cir. 2008). The courts are entitled to "determine only whether the arbitrator did his job—not whether he did it

2

well, correctly, or reasonably, but simply whether he did it." *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996). In other words, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

### III. DISCUSSION

For a reviewing court to vacate an arbitration award, "the moving party must sustain the heavy burden of showing one of the grounds specified in the [FAA] or one of certain limited common law grounds." *MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 857 (4th Cir. 2010). The FAA provides, in relevant part, that a federal court "in and for the district wherein the award was made" may vacate the award on one of the following grounds: "(2) where there was evident partiality or corruption in the arbitrators, or either of them . . . [or] (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(2), (4). Petitioner, relying on these FAA provisions and one common law rule, asserts three grounds on which this Court may vacate the arbitration award, each of which will be discussed in turn.

#### A. The Panel Was Not Biased Against Petitioner; Section 10(a)(2)

Petitioner argues that the award may be vacated under Section 10(a)(2) because "the FINRA Arbitration Panel was biased against him." (Mot. Vacate at 5, Doc. No. 1). Under 9 U.S.C. § 10(a)(2), a reviewing court "may vacate the award . . . where there was evident partiality or corruption in the arbitrators, or either of them." The Fourth Circuit has considered the following factors to assist the determination of "evident partiality":

> (1) any personal interest, pecuniary or otherwise, the arbitrator has in the proceeding; (2) the directness of the relationship between the arbitrator and the party he is alleged to favor; (3) the connection of the relationship to the arbitration; and (4) the proximity in time between the relationship and the arbitration proceeding.

*Consol. Coal Co. v. Local 1643, United Mine Workers of Am.*, 48 F.3d 125, 130 (4th Cir. 1995).

In order to show evident partiality under the FAA, the party moving for vacation has the burden of proving "that a reasonable person would have to conclude that an arbitrator was partial to the other party to the arbitration." *Id.* at 129 (quoting *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141, 146 (4th Cir. 1993)). The partiality must be "direct, definite, and capable of demonstration rather than remote, uncertain or speculative." *Id.*; *see also Peoples Sec. Life Ins. Co.*, 991 F.2d at 146 (noting that claimant's burden to show evident partiality is a "heavy" one).

Petitioner points to three occasions that purportedly show the panel's bias. First, he alleges that the panel "was biased against him because he was a *pro se* litigant." (*Id.*). To support this conclusion, Petitioner directs the Court to the words spoken by Panel Chairperson Lisa Morris during a pre-hearing conference call that occurred on May 24, 2013. (*Id.* at 2). Petitioner filed his claim *pro se* but had retained counsel before the date of the conference call. (*Id.*). At the onset of the conference call, Ms. Morris addressed Petitioner's counsel by stating, "We tried not to be prejudiced toward [Petitioner] because he was a *pro se* claimant, but it has been very difficult. We are so glad to have you on board." (Resp't Resp. at 12–13, Doc. No. 7). According to Petitioner, this statement shows bias on the part of Ms. Morris. Even assuming Ms. Morris uttered these exact words, that these words demonstrate bias is a tenuous argument at best. Rather, according to Petitioner's recollection, Ms. Morris explicitly stated that she and the other panel members tried to be unprejudiced toward Petitioner. (Mot. Vacate at 5, Doc. No. 1).

4

Nothing else within the statement evinces bias or prejudice toward Petitioner. Thus, Ms. Morris' statement, by itself, falls well short of hurdling the heavy burden imposed on Petitioner.

Second, Petitioner claims that Chairperson Morris continued to be biased toward him when she made certain statements regarding the testimony of John Long, a witness for Petitioner. Because Mr. Long had traveled from out of town, and because Petitioner's testimony was expected to last until the next day, Petitioner asked the panel to take Mr. Long's testimony first. (*Id.* at 3). Respondent moved the panel to prohibit Petitioner's presence in the hearing room during Mr. Long's testimony. (*Id.*). The panel, however, allowed Petitioner in the hearing room during Mr. Long's testimony, and Ms. Morris reassured Respondent that "the Panel will certainly take into consideration and weigh the issue[] when judging the testimony of both parties." (Resp't Resp. at 15, Doc. No. 7). It is the latter statement that Petitioner claims shows the bias of Ms. Morris; he characterizes her statement as an imposition of "extra scrutiny" on Petitioner's and Mr. Long's testimonies. (Mot. Vacate at 5, Doc. No. 1). Petitioner has mischaracterized Ms. Morris' statement. Ms. Morris simply addressed Respondent's concerns and reassured Respondent that the issue would be taken into account when considering the testimony; at no point did she relate to the parties that she would impose "extra scrutiny." Thus, once again, this statement fails to satisfy Petitioner's heavy burden of showing evident partiality.

Finally, Petitioner argues that the panel showed bias against him through "the arbitrary and capricious manner in which the case was dismissed." (*Id.* at 6). On cross-examination during the hearing, Petitioner admitted that he e-mailed sensitive and confidential information to his personal e-mail account, contacted governmental entities without prior approval, put his own financial interests above those of Respondent, and conducted outside speaking engagements without prior approval. (Resp't Resp. at 16, Doc. No. 7). All of these were in violation of

5

Respondent's policies and Petitioner's employment contract. Thus, Petitioner's admissions of his policy violations justify the panel's ruling. Petitioner's argument, in essence, boils down to a proposition that, because the panel ruled against him, the panel members were biased against him. However, an adverse ruling does not amount to a showing of bias; thus, Petitioner has not carried his burden of proffering facts that would allow a reasonable person to conclude that Ms. Morris, or the panel as a whole, was partial to Respondent. *See Three S Del., Inc. v. DataQuick Info. Sys.*, 492 F.3d 520, 530 (4th Cir. 2007) ("[T]he evidence that 3S does present (that the arbitrator ignored its statute of limitations defense, failed to give it an opportunity to respond, and excluded it from the hearing) either amount to misrepresentations or fail to demonstrate anything more than the fact that the arbitrator ruled against 3S on certain issues.").

### B. The Panel Did Not Exceed Its Powers; Section 10(a)(4)

Petitioner next argues that the panel exceeded its powers in violation of 9 U.S.C. § 10(a)(4), which states that a court may vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." In determining whether an arbitrator has exceeded his or her power, the Fourth Circuit has "generally recognized that 'any doubts concerning the scope of arbitrable issues as well as any doubts concerning the scope of the arbitrators' remedial authority, are to be resolved in favor of the arbitrators' authority as a matter of federal law and policy.'" *Three S. Del.*, 492 F.3d at 531.

First, Petitioner claims that when the panel granted Respondent's Motion to Dismiss, "it was making a ruling on subject matter which was not before the Panel." (Mot. Vacate at 8, Doc. No. 1). Specifically, Petitioner contends that counsel for Respondent based the entire Motion to

Dismiss on "the concept of law which precludes a finding of negligence for wrongful termination in an 'employment at will' relationship." (*Id.*). He contends that, because his Second Amended Statement of Claim does not contain a "claim for negligence having to do with wrongful termination" and Petitioner "never put [the issue] before the Panel for consideration," when the panel granted Respondent's Motion to Dismiss, it was making a ruling "on subject matter that was not before [the] Panel." (*Id.* at 7–8).

Petitioner's argument fails for two reasons. First, and contrary to Petitioner's assertions, Respondent's counsel argued for dismissal of all of the claims set forth by Petitioner's Second Amended Statement of Claim. (Corrected Partial Tr. FINRA Arbitration Hr'g at 4–8). The panel, after hearing all of Petitioner's evidence and considering both parties' arguments, granted the motion, dismissing with prejudice all of Petitioner's claims. (Arbitration Award at 2–3). Second, Petitioner did, in fact, allege wrongful termination in his Second Amended Statement of Claim. Particularly, he claimed that "Respondent owed a duty of care to [Petitioner and] . . . breached said duty . . . [i]n failing to follow its own policies and procedures concerning termination of its financial advisors." (Second Am. Statement of Claim at 8, Doc. No. 1-1). However, under South Carolina law, because Petitioner was an at-will employee, Respondent owed him no duty to properly apply its policies when it terminated his employment. *See Campbell v. Int'l Paper Co.*, No. 3:12-cv-03042-JFA, 2013 WL 1874850, at *8 (D.S.C. May 3, 2013). Therefore, Petitioner's wrongful termination claim must fail, and the panel properly dismissed it.

Petitioner also contends that, in the alternative, "[s]ince [Petitioner] did not receive a determination on whether or not [Respondent] negligently failed to perform its duty to accurately fill out [Petitioner's] U5 form[,] the Panel so imperfectly executed [its powers] that a mutual,

7

final, and definite award upon the subject matter submitted was not made." (Mot. Vacate at 9, Doc. No. 1). However, the accuracy of the Form U5 and whether it supported a claim for defamation were issues within the case. When the panel granted Respondent's Motion to Dismiss, it necessarily concluded that Petitioner's claims for negligence and defamation—both stemming from Respondent's completion of the Form U5—were without merit. Thus, because Petitioner received a determination from the panel, albeit an adverse one, his argument must fail.

Second, Petitioner argues that "[b]y simply granting [Respondent's] Motion to Dismiss[,] the Panel did not rule on the matter of expungement before closing the record." (*Id.* at 9). Expungement was a remedy the panel could have awarded Petitioner had it ruled in his favor on the defamation claim. However, the panel dismissed the defamation claim, and therefore no remedy, including expungement, was available to Petitioner. Additionally, when the written Arbitration Award was issued, the panel specifically ruled that Petitioner's request for expungement was dismissed. (Arbitration Award at 3). Therefore, because the panel made a determination regarding Petitioner's expungement request, his argument to this point must fail.

**C. The Panel Did Not Manifestly Disregard the Relevant Law**

Petitioner next argues that "[b]y deciding to scrutinize [Petitioner's] and Long's testimony to a greater degree than Rice's, the Panel manifestly disregarded the law and therefore the Panel's award should be vacated." (Mot. Vacate at 10, Doc. No. 1). "Manifest disregard is . . . an old yet enigmatic ground for overturning arbitral awards." *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 480 (4th Cir. 2012). The standard for "manifest disregard" requires more than "showing that the arbitrators misconstrued the law." *Id.* at 481. Rather, in order to vacate an arbitration award due to manifest disregard of the relevant law, the movant must show that:

8

"(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrator[ ] refused to heed that legal principle." *Id.* at 483.

According to Petitioner, "[t]he applicable legal standard in the instant case is that [Petitioner] had a right under FINRA Rule 13602(a), the Federal Rules of Evidence 615, and the United States Constitution[] to be present, without penalty, to attend the arbitration hearings as he is a natural person and a party to the case." (Mot. Vacate at 11, Doc. No. 1). He argues that Ms. Morris "refused to heed this principle when she stated on the record: 'I'll allow [Petitioner] to be in the room, reassuring the Respondent that the Panel will certainly take into consideration and weigh the issue, when judging the testimony of [Mr. Long and Petitioner].'" (*Id.*).

Petitioner fails to satisfy the second prong of the test set forth in *Wachovia Sec., LLC*—i.e., the movant must show that the arbitrator "refused to heed [the applicable] legal principle." *See Wachovia Sec., LLC*, 671 F.3d at 483. Petitioner cannot seriously contend that the panel ignored his right to remain in the hearing room during Mr. Long's testimony. In fact, quite the opposite is true—the panel allowed Petitioner to remain in the room. (Mot. Vacate at 3, Doc. No. 1). Therefore, Petitioner has failed to show that the panel manifestly disregarded the law.

For these reasons, the Court will not vacate the arbitration award because Petitioner has failed to sustain "the heavy burden of showing one of the grounds specified in the [FAA] or one

of certain limited common law grounds." *See MCI Constructors, LLC*, 610 F.3d at 857.

IT IS THEREFORE ORDERED that Petitioner's Motion to Vacate is DENIED.

Signed: May 28, 2014

Graham C. Mullen
United States District Judge